A06A2179. GREEN v. THE STATE.
(642 SE2d 167)

ELLINGTON, Judge.

On November 28, 2005, Kenya Green pled guilty to attempted escape, OCGA § 16-10-52. See also OCGA § 16-4-1 (criminal attempt). At the time he entered his plea pro se, however, Green asserted that the attempted escape was a misdemeanor, not a felony. After the trial court accepted Green's guilty plea, it imposed a felony sentence of five years to serve, pursuant to OCGA §§ 16-10-52 (b) (1) and 16-4-6 (b).[1] On appeal, Green contends the trial court erred in sentencing him for a felony. We agree. Therefore, we vacate Green's sentence and remand this case to the trial court with direction to sentence Green for misdemeanor attempted escape.

The record shows the following undisputed facts. In July 2002, Green pled guilty to the felonies of possession of marijuana with intent to distribute and obstruction of an officer, and he was sentenced to serve three years in prison. After serving part of his sentence, Green was released on parole. During a traffic stop on July

---

[1] OCGA §§ 16-10-52 (b) (1) ("A person who, having been convicted of a felony, is convicted of the offense of escape shall be punished by imprisonment for not less than one nor more than ten years."); 16-4-6 (b) ("A person convicted of the offense of criminal attempt to commit a felony shall be punished by imprisonment for not less than one year nor more than one-half the maximum period of time for which he could have been sentenced if he had been convicted of the crime attempted.").

1, 2004, Green was arrested without a warrant for violating the terms of his parole;[2] he was not charged with any other crime at that time. Green was placed in the Screven County jail pending a hearing on his alleged parole violation.

On July 4, 2004, before the hearing had been conducted, Green tried to escape by climbing over a fence at the jail. He was charged with attempted escape. During a November 2005 bench trial, Green pled guilty to the "factual allegations" of the attempted escape, but argued that the charge was a misdemeanor, not a felony. The court heard arguments on whether the attempted escape charge was a felony or misdemeanor, concluded that it was a felony under OCGA § 16-10-52 (b) (1), and sentenced Green to five years imprisonment.[3]

Green appeals, contending the court erred in sentencing him for felony attempted escape under OCGA § 16-10-52 (b) (1).[4] He argues that the court misconstrued the statute in finding that he escaped after he had been "convicted of a felony." Green argues that, although he had been convicted of felonies in 2002, he had been released on parole prior to his attempted escape and his parole had not yet been revoked at that time. He was not in jail serving part of his sentence for the 2002 felonies when he attempted to escape. Green contends, therefore, that he was not in jail because he had been "convicted of a felony" under OCGA § 16-10-52 (b) (1). Instead, he was in custody awaiting a hearing on an *alleged* parole violation. As such, the trial court should have sentenced him for misdemeanor attempted escape under OCGA § 16-10-52 (b) (4).

Green relies in part on this Court's decision in *Smith v. State*, 154 Ga. App. 608 (269 SE2d 100) (1980). In *Smith*, the defendant had been convicted of felony burglary and had been sentenced to ten years to be served on probation. Id. While in jail awaiting a hearing on an alleged probation violation, the defendant escaped. Id. He was subsequently arrested, convicted of felony escape, and sentenced to five years. Id. On appeal, this Court held that, in determining whether an escape is a felony or misdemeanor offense, a court must look at the reasons the

---

[2] The record does not show what acts Green committed which allegedly constituted a violation of his parole.

[3] Green does not challenge the sufficiency of the evidence to support a finding that he attempted to escape from the jail. Further, even though the court had not ruled on whether the attempted escape charge was a felony or misdemeanor at the time Green entered his guilty plea, Green does not challenge the validity of the guilty plea on appeal, nor does he contend that he should have been allowed to withdraw his plea after the court concluded that the charge was a felony but prior to sentencing. See OCGA § 17-7-93 (b) (a defendant has an absolute right to withdraw his or her guilty plea before sentencing).

[4] For the purposes of this opinion, the relevant portions of OCGA § 16-10-52 (b) are as follows: "(1) A person who, having been convicted of a felony, is convicted of the offense of escape shall be punished by imprisonment for not less than one nor more than ten years. . . . (4) Any other person convicted of the offense of escape shall be punished as for a misdemeanor."

defendant was confined at the time of the escape, because the "authority for the detention is an essential element of the felony offense of escape." (Citation omitted.) Id. This Court concluded that, at the time of his escape, the defendant was in jail because he was awaiting a probation revocation hearing, not because he had been convicted of a crime. Id. at 609. This was true even though the defendant had previously been convicted of a felony and his sentence for that conviction had not yet been completed, as in the instant case. Therefore, recognizing that criminal statutes must be construed most strongly against the State, this Court ruled that the defendant's conviction for escape must be treated as a misdemeanor, not a felony. Id.

Similarly, at the time of the escape in this case, Green was in jail following his arrest on an alleged parole violation. He had not been charged with any other crime. Moreover, it is undisputed that there had been no hearing on Green's alleged parole violation, no determination that Green had, in fact, violated his parole, and no revocation of his parole prior to his escape attempt. Therefore, Green was in custody due to an alleged parole violation, not because he had been "convicted of a felony," and, pursuant to *Smith*, his escape attempt would be a misdemeanor punishable under OCGA § 16-10-52 (b) (4).

The State attempts to distinguish *Smith*, however, by arguing that there is a difference between a probation revocation and a parole revocation. Specifically, the State argues that a defendant who is serving a probated sentence remains under the jurisdiction of the sentencing court, while a defendant who is on parole remains in the legal custody of the State Board of Pardons and Paroles ("Board") until the expiration of his sentence or he is pardoned. OCGA § 42-9-42 (d) (1). The State argues that, in contrast to a probation revocation, a parole revocation is an "administrative, rather than a judicial process," requiring only a hearing before the Board instead of a judge. According to the State, for the purpose of determining whether a parolee's escape following an alleged parole violation is a felony or misdemeanor, it does not matter whether the Board has conducted a hearing and ruled upon whether the parolee actually violated his parole, because the parolee's confinement at the time of the escape is the result of the parolee's prior conviction, not the parole violation. The State argues that a parolee may be re-incarcerated based upon a mere suspicion of a parole violation, and suggests that a parole revocation proceeding is nothing more than a formality. We disagree.

In *Morrissey v. Brewer*, 408 U. S. 471 (92 SC 2593, 33 LE2d 484) (1972), the United States Supreme Court considered the due process rights of two defendants whose paroles had been revoked without hearings. According to the Court,

the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. . . . [Even so,] the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

Id. at 480, 482 (II). Accordingly, the Supreme Court ruled that a parolee who is charged with a parole violation is entitled to an initial hearing in the nature of a preliminary hearing shortly after his or her arrest "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." (Citation omitted.) Id. at 485 (III) (a). Further, due process requires that "the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." Id. If it is determined that reasonable grounds exist for the revocation, the parolee is also entitled to a hearing prior to the Board's final decision on the parole revocation.[5] Id. at 487-488 (III) (b). According to the Supreme Court, the minimum due process requirements for this hearing include the following:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489 (III) (b).[6]

---

[5] The parolee may waive his right to this hearing. *Morrissey v. Brewer*, 408 U. S. at 487 (III) (b); OCGA § 42-9-51 (a).

[6] The Supreme Court subsequently extended the same protections to probation revocation proceedings in *Gagnon v. Scarpelli*, 411 U. S. 778 (93 SC 1756, 36 LE2d 656) (1973). *Johnson*

In Georgia, a parolee's right to a preliminary hearing and a parole revocation hearing has been codified in OCGA §§ 42-9-50 and 42-9-51. OCGA § 42-9-51 (a) and (b) states as follows:

[a] parolee who has allegedly violated the terms of his parole or conditional release shall, except as otherwise provided in this subsection, have a right to a final hearing before the board, to be held within a reasonable time after the occurrence of one of the events listed in this subsection. . . . The purpose of the hearing shall be to determine whether the alleged violator has in fact committed any acts which would constitute a violation of the terms and conditions of his parole or conditional release and whether those acts are of such a nature as to warrant revocation of parole or conditional release.

See also OCGA § 42-9-51 (d) (outlining the parolee's procedural rights for this hearing).

Given these due process protections, it seems clear that Green was entitled to a hearing to determine whether he had, in fact, violated his parole and whether his parole should be revoked. Because no such hearing had been conducted at the time Green attempted to escape, Green's incarceration in the Screven County jail was based solely upon an *alleged* parole violation, not his prior felony convictions. See *Smith v. State*, 154 Ga. App. at 609. Accordingly, the trial court erred in imposing a felony sentence for Green's attempted escape. We vacate the sentence and remand this case with instructions for the court to sentence Green for misdemeanor attempted escape, pursuant to OCGA §§ 16-10-52 (b) (4)[7] and 16-4-6 (c).[8]

*Judgment vacated and case remanded with direction. Johnson, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 9, 2007 — ■

*Robert L. Persse, Jack B. Williamson, Jr.,* for appellant.

---

*v. Boyington*, 273 Ga. 420, 421-422 (541 SE2d 355) (2001).

[7] Because Green had not been charged with any crime at the time he was incarcerated for the parole violation, he could not be sentenced for a felony pursuant to OCGA § 16-10-52 (b) (2), which applies to persons charged with felonies who escape from custody prior to conviction.

[8] A person convicted of attempting to commit a misdemeanor "shall be punished as for a misdemeanor." OCGA § 16-4-6 (c).

*Richard A. Mallard, District Attorney, Michael T. Muldrew, Brian A. Deal, Assistant District Attorneys*, for appellee.